# Ninth Circuit Case No. 22-60060

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# 𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE NINTH CIRCUIT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In re: HEARTWISE, INC.,

Debtor.

VITAMINS ONLINE, INC.

Appellant,

v.

HEARTWISE, INC.,

Appellee.

On Appeal from the U.S. Bankruptcy Appellate Panel
for the Ninth Circuit
BAP No. 22-01089
Bankruptcy Case No.: 8:20-bk-13335-SC
Hon. Judge Scott C. Clarkson, Bankruptcy Judge

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## APPELLEE'S OPPOSITION TO MOTION FOR SUMMARY DISPOSITION TO VACATE ORDERS ISSUED-NO JURISDICTION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

*Attorneys for Appellee,*
HEARTWISE, INC.,

Case Name: *Vitamins Online, Inc. v. Heartwise, Inc.*
9th Cir. Case No. 22-60060
United States Bankruptcy Appellate Panel of the Ninth Circuit
BAP Case No. 22-1089
United State Bankruptcy Court for the Central District of California, Santa Ana
USBC Case No. 8:20-bk-13335

1.    Corporate Disclosure Statement

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee

HEARTWISE, INC., makes the following disclosures:

1.    None.

Date:  March 30, 2023

MARSHACK HAYS LLP

By: */s/ Matthew W. Grimshaw*

DAVID A. WOOD
MATTHEW W. GRIMSHAW

*Attorneys for Appellee,*
HEARTWISE, INC.

## TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ....................................................................2

1.  SUMMARY OF ARGUMENT........................................................................1

2.  STATEMENT OF THE RELEVANT FACTS .....................................................3

   A.  The Judgment obtained by VOL ......................................................3

   B.  The Commencement of Debtor's Chapter 11 Case...........................4

   C.  The Competing Claims Regarding the Judgment ............................5

   D.  The Objections to the Competing Claims .......................................5

   E.  The Plan's Treatment of the Competing Claims..............................7

   F.  The Plan Has Been Substantially Consummated ...........................11

3.  THE BANKRUPTCY COURT HAD JURSIDICTION TO ENTER THE
ABSTENTION ORDER. .........................................................................12

   A.  The Bankruptcy Court had jurisdiction because Abstention Order resolved a
"core" proceeding. .........................................................................13

   B.  Alternatively, the Bankruptcy Court had jurisdiction because the Abstention
Order resolved a "non-core" proceeding. ..........................................16

     1)  If jurisdiction is determined at the time the Claim Objections were filed,
then "related to" jurisdiction existed. ..............................................17

i

2) If jurisdiction is determined at the time the Claim Objections were

adjudicate, then "related to" jurisdiction existed.....................................22

4. THE ABSURD RESULT THAT WOULD COME FROM GRANTING THE

MOTION.....................................................................................................24

5. CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Binder v. Price Watherhouse & Co. (In re Resorts Int'l, Inc.),*

   372 F.3 154, 166-67 (3d Cir. 2004) ....................................................22

*Bullard v. Blue Hills Bank,*

   575 U.S. 496, 502-03 (2015) ............................................................25

*Calip v. Tanigawa*

   2017 U.S.Dist.LEXIS 18015, *5-6 (Cal. N.D. Feb. 8, 2017) .............................15

*Celotex Corp. v. Edwards,*

   514 U.S. 300, 307 (1995) ..................................................................12

*Christensen v. Tucson Ests., Inc. (In re Tucson Ests., Inc.),*

   912 F.2d 1162, 1167 (9th Cir. 1990) ...................................................19

*Cook v. Winfrey,*

   141 F.3d 322, 326 (7th Cir. 1998) .....................................................14

*Courtyard,*

   729 F.3d at 1285 ............................................................................13

*Eastport Assocs. v. City of Los Angeles,*

   935 F.2d 1071, 1075-76 (9th Cir. 1991) ...............................................19

*Eastport Assocs.*,

935 F.2d at 1075-76; *Tucson Ests., Inc.*, 912 F.2d at 1167 ..................................20

*Fietz v. Great W. Savings (In re Fietz)*,

852 F.2d 455, 457 (9th Cir. 1988) .........................................................................17

*Harkey v. Grobstein (in re Point Ctr. Fin. Inc.)*,

957 F.3d 990, 998 (9th Cir. 2020) .........................................................................13

*In re Fondiller*,

707 F.2d 441, 442 (9th Cir. 1983) .........................................................................19

*In re General Carriers Corp.*,

258 B.R. 181, 190 (9th Cir. BAP 2001) ...............................................................14

*In re Heritage Hotel P'ship I*,

160 B.R. 374 (9th Cir. BAP 1993) ........................................................................25

*In re Umpqua Shopping Center*,

111 B.R. 303, 305-06 (9th Cir. BAP 1990) ..........................................................19

*Montana v. Goldin (In re Pegasus Gold Corp.)*,

394 F.3d 1189, 1193 (9th Cir. 2005) .....................................................................13

*Montana v. Goldin (In re Pegasus Gold Corp.)*,

394 F.3d 1189, 1194 (9th Cir. 2005) .......................................................................2

*Pegasus Gold Corp.*,

394. F.3d at 1194 ................................................................................. 17, 22, 23

*Trulis v. Barton,*

 107 F.3d 685, 691 (9th Cir. 1995) ........................................................................25

*Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Courtyard),*

 729 F.3d 1279, 1284-85 (9th Cir. 2013) .............................................................12

*WNS North America Inc. v. First Magnus Financial Corp. (In re First Magnus Financial Corp.),*

 Case No. CV 08-183-TUC-FRZ, 2008 WL 11339943 (D. Ariz. Dec. 11, 2008) 10

Appellee HeartWise, Inc.'s ("Debtor" or "Reorganized Debtor")[1]

respectfully submits this response to Appellant Vitamins Online, Inc.'s ("VOL")

motion pursuant to Circuit rule 3-6(a)(1) for an for an order vacating appealed

orders issued without jurisdiction ("Motion"):

## 1.    SUMMARY OF ARGUMENT[2]

The Motion is predicated on VOL's fundamental misunderstanding of the

Bankruptcy Code. The Motion erroneously asserts that the Bankruptcy Court, and

subsequently the Bankruptcy Appellate Panel ("BAP"), lacked jurisdiction to

address objections to competing claims (collectively, "Claim Objections") against

a fund established for the payment of such claims pursuant to the Reorganized

Debtor's confirmed chapter 11 plan ("Plan").[3]

An objection to claim is defined as a "core" proceeding under 28 U.S.C.

§157(b)(2)(B) and falls squarely within the Bankruptcy Court's jurisdiction under

28 U.S.C. §1334(b). Indeed, the Motion quotes the BAP's Memorandum

---

[1] References to HeartWise as "Debtor" are references to HeartWise prior to the Effective Date of its Plan (as that term is defined below). References to HeartWise as a "Reorganized Debtor" are references to HeartWise after the Effective Date.

[2] The facts cited in this Opposition are found in documents attached to the Motion or to this Opposition. Regarding the documents attached as exhibits to this Opposition, they are cited herein as "Debtor's Ex." and authenticated by the Declaration of Matthew W. Grimshaw filed concurrently herewith.

[3] Specifically, VOL and Magleby, Cataxinos & Greenwood, P.C. ("MCG") filed competing claims against the Debtor based on a pre-bankruptcy judgment ("Judgment").

confirming that jurisdiction exists under these statutes.[4]

Moreover, the Plan provides for full payment of all allowed claims. The Plan requires that the Claim Objections be decided before payment on a claim based on the Judgment is made.[5] Therefore, as an integral part of the effectuation of the Reorganized Debtor's Plan, the Bankruptcy Court had jurisdiction over the Claim Objections. *See, e.g., Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005).

Although jurisdiction exists, the Bankruptcy Court exercised its discretion and permissibly abstained from hearing the Claim Objections pursuant to 28 U.S.C. §1334(c)(1).[6] In short, understanding that it had jurisdiction to decide the matter, the Bankruptcy Court sent MCG and VOL to a court of competent jurisdiction in Utah to resolve their dispute because Utah law governs the outcome.[7] The BAP affirmed that decision.[8]

In the Motion, VOL attempts to morph the BAP's analysis as to why the Bankruptcy Court correctly exercised its discretion and abstained into an argument

---

[4] Motion, Ex. B, pg. 8. References to page numbers from the Motion correspond to the number stamped in the bottom of each page. References to page numbers from Exhibits to the Motion correspond to the numbers in the lower right-hand corner of each page.

[5] As explained below, the Plan contains two prerequisites to payment of the Judgment. First, the Reorganized Debtor must know who to pay—MCG or VOL. Second, the Reorganized Debtor's appeal of the Judgment must be resolved by the Tenth Circuit Court of Appeals, and subsequent proceedings resulting therefrom, if any, must also be resolved.

[6] Motion, Ex. B, pgs. 11-18; Ex. D, pgs. 8-10.

[7] Motion, Ex. B, pgs. 11-18; Ex. D, pgs. 8-10.

[8] Motion, Ex. A, pg. 1.

that jurisdiction did not exist in the first instance. When the Bankruptcy Court's and the BAP's decisions are placed in context, it is clear that VOL's arguments are specious at best.

Notably, if the Motion is granted (and, for the reasons set forth below, it should not be), then the parties to this appeal will be back in the Bankruptcy Court in the same position that they find themselves now. There will be competing claims to the same fund—one by MCG and the other by VOL. The Plan will still require that a court of competent jurisdiction decide whether MCG or VOL is entitled to payment on the competing claims. And if the Bankruptcy Court lacks jurisdiction to decide the matter, then a court in Utah will have to do so before payment is made.

In sum, VOL's strained arguments fail and the Motion should be denied. The Bankruptcy Court and BAP had jurisdiction to issue decisions regarding on the Claims Objections.

## 2.    STATEMENT OF THE RELEVANT FACTS

### A.    The Judgment obtained by VOL

Reorganized Debtor is an Oregon corporation and a retailer and wholesaler of nutritional supplements.[9]

---

[9] Debtor's Ex., 4 pg. 2.

In October 2013, VOL filed a complaint against Debtor in the United States District Court for the District of Utah ("Utah Court").[10] In November 2020, the Utah Court entered its Judgment in favor of VOL, and against Debtor, in the principal amount of approximately $9.5 million.[11] Debtor timely filed a notice of appeal ("Tenth Circuit Appeal").[12] The Tenth Circuit Appeal remains pending.[13]

### B. The Commencement of Debtor's Chapter 11 Case

On December 4, 2020 ("Petition Date"), Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").[14] At the time, Debtor was insolvent, as its liabilities exceeded the value of its assets as a result of the Judgment.[15]

Despite insolvency, Debtor labored from the inception of its Chapter 11 case to propose a plan that paid all allowed claims in full, including the Judgment.[16] Indeed, early in the case, Debtor proposed a plan that would have accomplished that goal.[17] Unfortunately, Debtor's reorganization efforts were repeatedly hampered by VOL's "scorched earth" litigation tactics.[18]

---

[10] Debtor's Ex. 2, pg. 2.
[11] Debtor's Ex. 2, pg. 2; Ex. 4, pg. 2; Motion, Ex. H, pg. 12.
[12] Debtor's Ex. 2, pg. 3; Motion, Ex. B, pgs. 3-4.
[13] Motion, Ex. B, pgs. 3-4.
[14] Debtor's Ex. 1, pg. 1; Ex. 4, pgs. 2-3; Motion, Ex. B, pg. 4.
[15] Debtor's Ex. 4, pg. 20.
[16] Debtor's Ex. 2, pg. 3.
[17] Debtor's Ex. 2, pg. 3.
[18] Motion, Ex. E, pg. 3; Debtor's Ex. 2, pgs. 3-4.

### C.  The Competing Claims Regarding the Judgment

On April 28, 2021, VOL filed its proof of claim 3-2 based on the Judgment ("VOL Claim").[19] Through the VOL Claim, VOL asserts a right to payment of approximately $14.5 million based on the Judgment, pre-judgment interest, and an alleged right to payment of its attorneys' fees.[20]

On May 29, 2021, MCG filed its proof of claim 5-2, asserting a right to payment based on the Judgment ("MCG Claim").[21] In the MCG Claim, MCG acknowledges that it is the law firm that represented VOL in obtaining the Judgment.[22] MCG also asserts that it holds the right to collect the approximately $14.5 million owed to VOL as a result of the Judgment (and the VOL Claim) based, at least in part, on the retainer agreement executed by VOL.[23]

### D.  The Objections to the Competing Claims

On May 29, 2021, MCG filed its objection to the VOL Claim ("MCG Objection").[24] There, as in the MCG Claim, MCG contends that it (and not VOL) holds the right to collect on the Judgment.[25] Thus, MCG asserts that any payment

---

[19] Debtor's Ex. 4, pgs. 4-5.
[20] Debtor's Ex. 4, pgs. 4-5.
[21] Debtor's Ex. 4, pgs. 4-5; Motion, Ex. H.
[22] Debtor's Ex. 4, pgs. 4-5; Motion, Ex. H.
[23] Debtor's Ex. 4, pgs. 4-5; Motion, Ex. H.
[24] Motion, Ex. G, pg. 1.
[25] Motion, Ex. F, pgs. 1-2 & 13-55; Ex. G, pgs. 2-5.

on the Judgment must be made to it, and not VOL.[26] The MCG Objection was not immediately set for hearing.[27]

On October 30, 2021, VOL responded to the MCG Objection, contending, among other things, that MCG was not given the right to collect on the Judgment and that MCG is not a "creditor" of the Debtor.[28] That same day, VOL noticed a hearing before the Bankruptcy Court on the MCG Objection for November 22, 2021.[29]

On November 8, 2021, VOL filed its objection to the MCG Claim ("VOL Objection;" together the MCG Objection and VOL Objection constitute the Claim Objections).[30] There, VOL contends, among other things, that MCG was not given the right to collect on the Judgment and that MCG is not a "creditor" of the Debtor.[31] The VOL Objection was set for hearing in December 13, 2021.[32]

Eventually, the hearings on the Claim Objections were consolidated and set for hearing on January 24, 2021.[33] After reviewing the Claim Objections and listening to oral argument, the Bankruptcy Court entered orders sustaining the

---

[26] Motion, Ex. G, pgs. 2-5.
[27] Motion, Ex. I, pgs., 35-36.
[28] Motion, Ex. B, pg. 4; Ex. E, pgs. 3-5.
[29] Motion, Ex. I, pg. 64.
[30] Motion, Ex. I, pg. 67.
[31] Motion, Ex. B, pg. 4; Ex. F, pgs. 1-2 & 13-55.
[32] Motion, Ex. I, pg. 67.
[33] Motion, Ex. F, pgs. 1-2; Ex. I, pgs. 84 & 90-91.

MCG Objection and overruling the VOL Objection.[34] Then, after various motions
for reconsideration were filed by VOL, the Bankruptcy Court vacated its orders
sustaining the MCG Objection and overruling the VOL Objection and chose
instead to abstain from the dispute regarding who is entitled to payment on the
Judgment.[35] The Bankruptcy Court directed VOL and MCG to obtain a ruling from
an appropriate court and return so that the prevailing party could obtain payment
on the Judgment ("Abstention Order").[36]

VOL appealed the Abstention Order.[37] The BAP affirmed ("BAP
Judgment").[38] VOL appealed the BAP's order, seeking a different result from this
Court.

### E.    The Plan's Treatment of the Competing Claims

On September 22, 2021, Debtor filed its Plan.[39] There, Debtor proposed to
pay creditors holding allowed claims in full on the Effective Date.[40] The Plan

---

[34] Motion, Ex. E, pgs. 1-5.
[35] Motion, Ex. C, pgs. 1-4; Ex. D, pgs. 5-11.
[36] Motion, Ex. D, pgs. 8-11. Additionally, the Reorganized Debtor objected to the VOL Claim
and MCG Claim, preserving its rights in light of the Tenth Circuit Appeal. Motion, Ex. D, pg. 3.
[37] Motion, Ex. A, pg. 1; Ex. B, pgs. 7-8.
[38] Motion, Ex. A, pg. 1; Ex. B, pg. 18.
[39] Debtor's Ex. 1, pg. 1; Motion, Ex. B, pg. 4.
[40] Debtor's Ex. 1, pgs. 4-5; Motion, Ex. B, pg. 5. The Plan defines the Effective Date as "the first
business day that is at least fifteen (15) calendar days following the date of the entry of the Court
order confirming this Plan (the 'Confirmation Order') when and if all of the following conditions
for the effectiveness of the Plan have been satisfied or waived by the Debtor: (1) there is no stay
in effect with respect to the Confirmation Order; and (2) the Confirmation Order is not subject to
any appeal or rehearing." Debtor's Ex. 1, pgs. 1-2.

estimates that Debtor's unsecured claims (disputed and undisputed) total approximately $14.8 million.[41]

Before the Plan was filed, MCG objected to the VOL Claim, but no party objected to the MCG Claim.[42] Therefore, the Plan proposed to satisfy the claims based on the Judgment by depositing $14.5 million ("Funds") into the Bankruptcy Court's registry on the Effective Date and using those Funds to pay the MCG Claim after the Tenth Circuit Appeal and any subsequent proceedings are resolved. Specifically, the Plan provides:

> The amount asserted in Claim No. 5 of Magleby, Cataxinos & Greenwood, P.C. ("Magleby") . . . **shall be deposited with the Court's registry as interpleaded funds on the Effective Date, and will be released to Magleby only upon further order of this Court**.

> To be clear, the Debtor has filed an appeal of the Judgment, and Vitamins Online, Inc., the judgment creditor, has stated that it will be pursuing a cross-appeal of the Judgment. Nonetheless, **the $14.5 million to pay the Judgment in full, which includes attorneys' fees and interest, will be fully funded on the Effective Date as set forth above, but not released to Magleby until all appeals of the Judgment, and any subsequent proceedings have been completed**.[43]

With regard to amounts set aside to pay disputed claims, like those based on the Judgment, the Plan provides: "[a]ny funds reserved on account of a Disputed

---

[41] Debtor's Ex. 1, pgs. 2-5.
[42] Debtor's Ex. 2, pg. 4; Motion, Ex. I, pgs. 1-59.
[43] Debtor's Ex. 1, pgs. 4-5 (emphasis added).

Claim that becomes and Allowed Claim which exceed the amount due to the

holder of such Allowed Claim shall be returned to the Reorganized Debtor."[44]

The Bankruptcy Court scheduled a trial on confirmation of the Plan

("Confirmation Trial"), which commenced on November 10, 2021, and concluded

on November 16, 2021.[45]

On November 23, 2021, the Bankruptcy Court entered a Memorandum

Decision and Order ("Memorandum Decision") overruling the objections to the

Plan, including VOL's assertion that the VOL Claim had to be paid immediately:

> Upon first impression, it may seem that Claim 3-2 is not being
> treated in the same way as claims scheduled by Heartwise. The
> latter type of claims is being paid in cash in full on the effective
> date, whereas the money earmarked for payment of Claim 3-2
> (or, possibly, Magleby's Claim) is being interpleaded in the
> Court's registry in view of the dispute between VOL and
> Magleby as to who is entitled to payment of the Judgment in
> the first instance.
>
> A more searching analysis indicates no difference in treatment.
> The First Amended Plan provides for the payment in full of
> allowed claims on the effective date. Claim 3-2, in view of the
> pending objection by Magleby and Heartwise's appeal of the
> Judgment, is not an allowed claim. 11 U.S.C. §502; Fed. R.
> Bankr. P. 3007. If Magleby's objection is overruled in its
> entirety and Claim 3-2 is allowed in its entirety, Claim 3-2
> would move closer to being paid in cash in full. However,
> Heartwise's appeal of the Judgment would still prevent Claim
> 3-2 from being paid until such time (if ever) that the appeal is
> decided in favor of the [sic] VOL. If VOL finally prevails, at

---

[44] Debtor's Ex. 1, pg. 8.
[45] Debtor's Ex. 2, pg. 1.

that time Claim [3]-2 [sic] would be allowed, and payment of
Claim 3-2 in cash in full would follow.

In any event, differences in treatment within a single class do
not violate Bankruptcy Code section 1123(a)(3) where the
claims subject to different treatment have not yet been allowed
and are disputed. *WNS North America Inc. v. First Magnus
Financial Corp. (In re First Magnus Financial Corp.)*, Case
No. CV 08-183-TUC-FRZ, 2008 WL 11339943 (D. Ariz. Dec.
11, 2008).[46]

The Bankruptcy Court directed Debtor to lodge a proposed confirmation

order, as well as proposed findings of fact and conclusion of law supporting the

proposed confirmation order, consistent with the terms of the Memorandum

Decision.[47]

On December 17, 2021, the Bankruptcy Court entered its Confirmation

Order.[48] The Confirmation Order approved the Plan's requirement that the

payment of any claim based on the Judgment must await resolution of the Tenth

Circuit Appeal and any subsequent proceedings.[49] Indeed, the Confirmation Order

provides, "[t]he Plan and each of its provisions (whether or not specifically

approved herein) are approved and confirmed under Section 1129 of the

Bankruptcy Code . . . ."[50] The Bankruptcy Court's Findings of Fact and

Conclusions of Law supporting the Confirmation Order ("Findings and

---

[46] Debtor's Ex. 2, pgs. 8-9 (emphasis in the original).
[47] Debtor's Ex. 2, pg. 17.
[48] Debtor's Ex. 3, pg. 1.
[49] Debtor's Ex. 3, pg. 6; Ex. 4, pg. 13.
[50] Debtor's Ex. 3, pg. 6.

Conclusions"), also entered on December 17, 2021, explain why the VOL Claim

and the MCG Claim will not be paid until the Tenth Circuit Appeal and any

subsequent proceedings are concluded:

> As to the Judgment, the Plan provides that the full amount of
> the Judgment, plus pre-judgment interest, post-judgment
> interest, post-petition interest and $57,478.16 in attorneys' fees
> are being deposited into the Court's registry pending an
> outcome of the objections to Claim Nos. 3 and 5, and the appeal
> and cross-appeal of the Judgment. *See* Plan, Section II(C)(2).
> The Court has yet to determine which party, Magley or
> Vitamins Online, will be paid the Judgment, or any portion
> thereof. Further, the Judgment has been appealed by the Debtor
> to the 10th Circuit, and Vitamins Online has asserted that it will
> file a cross-appeal of the Judgment. In view of the objection to
> Claim No. 3 by Magleby, the objection to Claim No. 5 by
> Vitamins Online, and the appeal of the Judgment by the Debtor,
> any claim comprising the Judgment is not an "allowed" claim.
> *See* 11 U.S.C. §502; *see also* Fed. R. Bankr. P. 3007. Once/if
> allowed, the claim that survives as the claim for the Judgment
> will be paid in full, as provided for in the Plan, from the monies
> that will be on deposit with the Court's registry.[51]

No party appealed the Confirmation Order.[52]

## F.     The Plan Has Been Substantially Consummated

Debtor deposited the Funds into the Bankruptcy Court's registry in

accordance with the terms of the Plan.[53] On January 4, 2022, Reorganized Debtor

filed a notice with the Bankruptcy Court, informing all parties that the Plan's

---

[51] Debtor's Ex. 4, pg. 13.
[52] Motion, Ex. I, pgs. 83-86.
[53] Motion, Ex. D, pg. 3; Ex. I, pgs. 85-86.

Effective Date occurred on January 3, 2022.[54] As a result, the Plan has been substantially consummated.

**3.     THE BANKRUPTCY COURT HAD JURSIDICTION TO ENTER THE ABSTENTION ORDER.**

"Like all federal courts, the jurisdiction of the bankruptcy courts is created and limited by statute." *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Courtyard)*, 729 F.3d 1279, 1284-85 (9th Cir. 2013)(citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

A bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). In general terms, this jurisdictional grant allows a bankruptcy court to hear "core" proceedings and "non-core" proceedings. There are limits, however, regarding a bankruptcy court's jurisdiction to finally decide "non-core" matters. 11 U.S.C. §157(c)(1).

Regardless of the label applied, the Bankruptcy Court had jurisdiction to enter the Abstention Order and the BAP had jurisdiction to enter the BAP Judgment.

---

[54] Motion Ex. I, pg. 86.

**A.** **The Bankruptcy Court had jurisdiction because Abstention**

       **Order resolved a "core" proceeding.**

The phrases "arising under" and "arising in" in 28 U.S.C. §1334(b) are terms

of art. *Courtyard*, 729 F.3d at 1285.

> Proceedings "arising under" title 11 involve causes of action
> created or determined by a statutory provision of that title. *Id.*
> Similarly, proceedings "arising in" title 11 are not those created
> or determined by the bankruptcy code, but which would have
> not existence outside of a bankruptcy case.

*Courtyard*, 729 F.3d at 1285 (citations omitted).

In general, 28 U.S.C. §157(b)(2) refers to matters "arising under" or "arising

in" a bankruptcy case as "core" proceedings. *See, e.g., Pegasus Gold Corp.*, 394

F.3d at 1193. Although 28 U.S.C. §157 is not a jurisdictional statute, it clarifies a

bankruptcy court's authority to adjudicate certain matters that routinely arise in

bankruptcy proceedings. *Harkey v. Grobstein (In re Point Ctr. Fin. Inc.)*, 957 F.3d

990, 998 (9th Cir. 2020). For example, 28 U.S.C. §157(b)(2)(B) defines a

proceeding involving the "allowance or disallowance of claims against the estate"

as a "core" proceeding, meaning a bankruptcy court exercises "arising under" or

"arising in" jurisdiction under 28 U.S.C. §1334(b) when adjudicating such matters.

Here, both MCG and VOL filed a claim against Debtor's bankruptcy estate

based on the Judgment. The MCG Objection asserts that MCG (and not VOL) has

the right to collect on the Judgment. The VOL Objection asserts the opposite,

contending that VOL (and not MCG) has the right to collect on the Judgment. Thus, the Claim Objections each constitute a proceeding involving the "allowance or disallowance of" a claim against Debtor's bankruptcy estate and are "core" proceedings. 28 U.S.C. §157(b)(2)(B).

Admittedly, the Bankruptcy Court did not cite either 28 U.S.C. §1334(b) or 28 U.S.C. §157 as the statutory predicate for its jurisdiction in connection with the Abstention Order.[55] But that failure does not mean that jurisdiction did not exist. Indeed, any party with more than a passing familiarity with the Bankruptcy Code understands that a claim objection is a "core" proceeding that "arises under" or "arises in" a bankruptcy case. 28 U.S.C. §1334(b). Moreover, the Bankruptcy Court understood that it had jurisdiction because it elected to abstain from hearing the matter. Indeed, the Bankruptcy Court could not have abstained without exercising jurisdiction in the first instance. *In re General Carriers Corp.*, 258 B.R. 181, 190 (9th Cir. BAP 2001). Thus, contrary to VOL's assertions, the Bankruptcy Court did determine that it had jurisdiction.

Similarly, regardless of whether MCG or VOL identify a jurisdictional basis in either of the Claim Objections, jurisdiction existed. *See, e.g.*, *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998) ("Imperfections in the pleadings will not divest a federal court of jurisdiction where the complaint as a whole reveals a proper basis

---

[55] Motion, Ex. D, pgs. 8-10.

for jurisdiction.); *Calip v. Tanigawa* 2017 U.S.Dist.LEXIS 18015, *5-6 (Cal. N.D. Feb. 8, 2017) (the omission of a jurisdictional statement from a pleading was not fatal when it could be gleaned from allegations contained therein). The existence of jurisdiction based on 28 U.S.C. §1334(b) is independent of its identification. And the BAP confirmed the Bankruptcy Court's jurisdiction to enter the Abstention Order.[56]

Further, the BAP's jurisdiction is derived from 28 U.S.C. § 158, which governs appeals of bankruptcy court orders. Because the Bankruptcy Court had jurisdiction under 28 U.S.C. §1334(b) to enter the Abstention Order, the BAP had jurisdiction to enter the BAP Judgment. And, to be clear, it is VOL who *appealed* both the Abstention Order and the BAP Judgment, and not liking the results, filed this instant Motion. At no point in the procedural history of this appeal has VOL argued that the Bankruptcy Court or the BAP could not address the Claim Objections. Now, after VOL has lost at every turn, it files a Motion that strains credibility.

VOL argues that the Claim Objections had virtually no impact on the Reorganized Debtor, and, thus, the proceeding was not a "core" proceeding.[57]

---

[56] Motion, Ex. B, pg. 8.
[57] Motion, pgs. 12-14.

Conveniently, VOL omits that the Bankruptcy Courts' Findings and Conclusions with regard to the Plan, which state:

> The Court has yet to determine which party, Magley or Vitamins Online, will be paid the Judgment, or any portion thereof. Further, the Judgment has been appealed by the Debtor to the 10th Circuit, and Vitamins Online has asserted that it will file a cross-appeal of the Judgment. In view of the objection to Claim No. 3 by Magleby, the objection to Claim No. 5 by Vitamins Online, and the appeal of the Judgment by the Debtor, any claim comprising the Judgment is not an "allowed" claim. *See* 11 U.S.C. §502; *see also* Fed. R. Bankr. P. 3007. Once/if allowed, the claim that survives as the claim for the Judgment will be paid in full, as provided for in the Plan, from the monies that will be on deposit with the Court's registry.[58]

The Bankruptcy Court clearly had jurisdiction under 28 U.S.C. §1334(b) and the express terms of the Plan.[59]

In sum, the Abstention Order constitutes the Bankruptcy Court's ruling on the Claim Objections, which are "core proceedings." There can be no doubt that the Bankruptcy Court had jurisdiction to enter that order. Similarly, the BAP's jurisdiction cannot be questioned under 28 U.S.C. §158.

As such, the Motion should be denied.

## B.     Alternatively, the Bankruptcy Court had jurisdiction because the Abstention Order resolved a "non-core" proceeding.

Alternatively, if the Bankruptcy Court lacked "arising under" or "arising in" jurisdiction (and it did not), then it had "related to" jurisdiction to adjudicate the

---

[58] Debtor's Ex. 4, pg. 13.
[59] Debtor's Ex. 1, pg. 12; Ex. 3, pg. 13; Ex. 4, pg. 13.

Claim Objections.

In general, a bankruptcy court enjoys a broader jurisdictional grant under 28 U.S.C. §1334(b) regarding matters that are "related to" a bankruptcy case. Such matters are often referred to as "non-core" proceedings. In analyzing "related to" jurisdiction, timing is important as a bankruptcy court's jurisdiction contracts at with plan confirmation. *Pegasus Gold Corp.*, 394. F.3d at 1194.

Although the Claim Objections were filed before the Plan was confirmed, the Bankruptcy Court did not fully adjudicate the matters until after Plan confirmation. But the timing of the adjudication is of no consequence in this case as the Bankruptcy Court had jurisdiction even under the more stringent test.

> **1)** **If jurisdiction is determined at the time the Claim Objections were filed, then "related to" jurisdiction existed.**

Prior to the confirmation of a chapter 11 plan, a bankruptcy court has "related to" jurisdiction if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Fietz v. Great W. Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (citation omitted). The outcome of the Claim Objections satisfies that test.

At the point in time when both of the Claim Objections were filed, there were two competing claims against Debtor's bankruptcy estate based on the

Judgment.[60] Each claim demanded payment on the same obligation.[61] For Debtor to avoid paying twice on the same debt, an adjudication of the Claim Objections was necessary.

Although the Claim Objections are essentially a dispute between MCG and VOL (and not the Reorganized Debtor), the outcome of that dispute is critical to the Reorganized Debtor. Currently, both the MCG Claim and the VOL Claim are "disputed" claims under the Plan.[62] Neither claim will be paid until one becomes (or both claims become) an "allowed" claim, which will not occur until two things happen:

First, the Claim Objections must be adjudicated such that the Reorganized Debtor knows who is entitled to payment on the Judgment.[63] Second, the Tenth Circuit Appeal and any subsequent proceedings required must be completed so that the Reorganized Debtor knows how much is owed based on the Judgment.[64] This second requirement is critical as the Plan provides the Reorganized Debtor with an interest in the funds currently on deposit with the Bankruptcy Court. Specifically,

---

[60] Debtor's Ex. 1, pg. 1; Ex. 4, pgs. 4-6.
[61] Motion, Ex. B, pg. 4; Ex. F, pgs. 1-2 & 13-55; Ex. G, pgs. 1-2.
[62] The VOL Claim is disputed because of the MCG Objection and the pendency of the Tenth Circuit Appeal. Further, the Reorganized Debtor filed its own objection to the VOL Claim based, in part, on the Tenth Circuit Appeal. The MCG Claim is disputed because of VOL Objection and the pendency of the Tenth Circuit Appeal. Debtor's Ex. 4, pg. 13.
[63] Debtor's Ex. 1, pgs. 4-5; Ex. 4, pg. 13.
[64] Debtor's Ex. 1, pgs. 4-5; Ex. 4, pg. 13.

18

if the Judgment is reduced through the Tenth Circuit Appeal or subsequent proceedings such that the amount owed is less than the $14.5 million currently held by the Bankruptcy Court, then the Reorganized Debtor is entitled to the remainder of the funds.[65]

The outcome of the Claim Objections has an actual and direct impact on the administration of the bankruptcy case—it determines who is entitled to payment on the competing claims based on the Judgment. Nonetheless, the Bankruptcy Court elected to exercise its discretion and permissibly abstain from hearing the Claim Objections.[66] In doing so, the Bankruptcy Court analyzed the abstention factors (collectively, "Abstention Factors") set forth in *Eastport Assocs. v. City of Los Angeles,* 935 F.2d 1071, 1075-76 (9th Cir. 1991) and *Christensen v. Tucson Ests., Inc. (In re Tucson Ests., Inc.),* 912 F.2d 1162, 1167 (9th Cir. 1990) and determined that a court of competent jurisdiction in Utah was the appropriate forum for the dispute.

VOL cites to statements made by the Bankruptcy Court and the BAP explaining why the Abstention Factors weigh in favor of abstention to argue that

---

[65] Previously, VOL has incorrectly contended that the Reorganized Debtor lacks standing to participate in these proceedings. The Reorganized Debtor's standing is based on 11 U.S.C. §1109(b) and its pecuniary interest in the funds deposited with the Bankruptcy Court. *See, e.g., In re Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983); *In re Umpqua Shopping Center*, 111 B.R. 303, 305-06 (9th Cir. BAP 1990); Debtor's Ex. 1, pg. 8.
[66] Motion, Ex. B, pg. 7; Ex. D, pgs. 8-10.

jurisdiction is lacking. Specifically, VOL contends that the following statements show that no "related to" jurisdiction exists:

a) "…despite the core nature of a claims allowance proceeding, HeartWise would be entirely unaffected by the outcome of the dispute [between MCG and VOL]…"[67]

b) "The bankruptcy court implicitly, and correctly, found that, while the dispute was ostensibly a core proceeding, its substance was a two-party dispute [between MCG and VOL] that did not impact the estate.[68]

When these statements are placed in context, it becomes apparent that VOL's arguments are meritless.

Two of the twelve Abstention Factors are "(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case" and "(7) the substance rather than form of an asserted 'core' proceeding . . . ." *Eastport Assocs.*, 935 F.2d at 1075-76; *Tucson Ests., Inc.*, 912 F.2d at 1167. Both statements relied on by VOL are extracts from the BAP's explanation of how these two factors were appropriately weighed by the Bankruptcy Court in deciding to abstain. The text surrounding the statements conveniently cherrypicked by VOL make that clear.

For example, the first quote is taken from the following passage:

The bankruptcy court also implicitly found that the dispute was only peripherally related to the main bankruptcy case and, despite the core nature of the claims allowance proceeding,

---

[67] Motion, pg. 19.
[68] Motion, pg. 19.

HeartWise would be entirely unaffected by the outcome of the dispute (factors six and seven: degree of relatedness or remoteness of the proceeding to the main bankruptcy case and substance rather than form of an asserted core proceeding.[69]

Similarly, the second quote is taken from the following:

VOL also contends that the bankruptcy court erred in finding that the dispute was a two-party dispute, arguing that HeartWise is necessarily a party to the dispute because it will have to pay the claims if allowed (at the same time, VOL argues that HeartWise has no standing in this appeal). But VOL does not address how the resolution of the dispute will impact the estate. VOL asserts that the bankruptcy court's finding means that the dispute is a non-core matter, *which is error because it is a core matter concerning claims allowance*. But the bankruptcy court implicitly, and correctly, found that, while the dispute was ostensibly a core proceeding, its substance was a two-party dispute that did not impact the estate.[70]

Both the Bankruptcy Court and the BAP recognized that the Bankruptcy Court had jurisdiction to adjudicate the Claim Objections.[71] At the same time, both courts recognized that Claim Objections do not impact the Reorganized Debtor's main bankruptcy case because the Plan has already been confirmed.[72] Although the outcome dictates who will be entitled to collect on the Judgment at the appropriate time, that did not compel the Bankruptcy Court to decide the matter. Instead, the Bankruptcy Court determined that the two-party nature of the dispute weighed in

---

[69] Motion, Ex. B. pgs. 15-16.
[70] Motion, Ex. B. pgs. 16-17.
[71] Motion, Ex. B, pg. 8; Ex. D, pgs. 8-10.
[72] Motion, Ex. B, pgs. 15-18; Ex. D. pgs. 8-10.

favor of abstention.[73] And it was not the only factor weighing in favor of abstention, as the BAP confirmed.[74]

In short, the statements relied on by VOL only support its argument when they are taken out of context. When view appropriately, the BAP's statements confirm that "related to" jurisdiction existed such that the Bankruptcy Court and BAP appropriately entered the Abstention Order and the BAP Judgment.

**2)  If jurisdiction is determined at the time the Claim Objections were adjudicate, then "related to" jurisdiction existed.**

A bankruptcy court's "related to" jurisdiction contracts with plan confirmation. *Pegasus Gold Corp.*, 394. F.3d at 1194. Post-confirmation, a bankruptcy court may only exercise "related to" jurisdiction over matters "affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.* (quoting *Binder v. Price Watherhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3 154, 166-67 (3d Cir. 2004).

The Claim Objections affect the implementation and execution of the Plan. Indeed, a cornerstone of the Plan is payment of all allowed claims against the Reorganized Debtor.[75] In light of the dispute over the Judgment, as embodied in the Tenth Circuit Appeal, the Reorganized Debtor deposited $14.5 million in the

---

[73] Motion, Ex. B, pgs. 15-18; Ex. D. pgs. 8-10.
[74] Motion, Ex. B, pgs. 15-18; Ex. D. pgs. 8-10.
[75] Debtor's Ex. 1, pgs. 4-5.

Bankruptcy Court's registry to ensure satisfaction of any claim based on the Judgment after the Tenth Circuit Appeal and any subsequent proceedings are resolved.[76] Currently, however, there are two competing claims for payment on the Judgment—the VOL Claim and the MCG Claim.[77] The Plan requires that a court decide who is entitled to the funds.[78] And payments under the Plan cannot be completed until such a determination is made.[79]

Thus, the completion of the Plan enjoys a "close nexus" with the adjudication of the Claim Objections such that "related to" jurisdictions exists. *Pegasus Gold Corp.*, 394. F.3d at 1194. In other words, the Bankruptcy Court had jurisdiction to enter the Abstention Order and the BAP had jurisdiction to enter the BAP Judgment. Despite having jurisdiction, the Bankruptcy Court elected to abstain from hearing the Claim Objections, a decision affirmed by the BAP.[80] But that does not alter the fact that jurisdiction existed in the first instance.

In sum, regardless of whether "arising under," "arising in," or "related to" jurisdiction was used, the Bankruptcy Court had jurisdiction to adjudicate the Claim Objections. The Bankruptcy Court chose not to do so, entering the

---

[76] Debtor's Ex. 1, pgs. 4-5; Ex. 4, pg. 13.
[77] Debtor's Ex. 1, pgs. 4-5; Ex. 4, pg. 13.
[78] Debtor's Ex. 1, pgs. 4-5; Ex. 4, pg. 13.
[79] Debtor's Ex. 1, pgs. 4-5; Ex. 4, pg. 13.
[80] Motion, Ex. A, pg. 1; Ex. B, pgs. 11-18; Ex. D, pgs. 8-10.

Abstention Order. The BAP had jurisdiction and affirmed. The lower courts'

abstention does not mean that jurisdiction was lacking.

## 4.   THE ABSURD RESULT THAT WOULD COME FROM GRANTING THE MOTION.

It is difficult to understand why VOL filed the Motion because, if it is

granted, then the parties will find themselves in the same position that they are in

today. The Motion requests an order determining that the Bankruptcy Court lacked

jurisdiction under 28 U.S.C. §1334(b) to enter the Abstention Order and that the

BAP lacked jurisdiction to enter the BAP Judgment.[81] Such an order would

necessarily mean that the Bankruptcy Court lacks jurisdiction over the Claim

Objections.[82]

Therefore, if the Motion is granted, then the parties will return to the

Bankruptcy Court and the Claim Objections will be dismissed. Yet MCG and VOL

will still have to obtain a ruling from a court of competent jurisdiction determining

who is entitled to be paid on the Judgment because the VOL Claim and the MCG

Claim will remain pending.[83] And the Plan prevents a payment on a claim based on

---

[81] Motion, pgs. 21-22.

[82] Notably, the Motion asks for an order that directs the Bankruptcy Court to dismiss the MCG Objection for lack of jurisdiction but makes no mention of the VOL Objection. The Bankruptcy Court cannot have jurisdiction over one of the objections, but not the other. If the Bankruptcy Court lacks jurisdiction over the MCG Objection, then it also lacks jurisdiction over the VOL Objection.

[83] Debtor's Ex. 1, pgs. 4-5; Ex. 4, pg. 13.

the Judgment without an adjudication as to who is entitled to receive the payment. In other words, MCG and VOL would be forced to seek a ruling from a court in Utah regarding who is entitled to collect on the Judgment because the Bankruptcy Court will lack jurisdiction to make such a determination. Then, after the matter is adjudicated, MCG and VOL would have to return to the Bankruptcy Court so that the Reorganized Debtor could obtain an order permitting a payment under the Plan. Notably, that course of action is precisely what the Abstention Order and the BAP Judgment require them to do.[84]

## 5. CONCLUSION

Contrary to VOL's strained arguments, the Bankruptcy Court's election to abstain does not mean that jurisdiction was lacking. The Bankruptcy Court had "arising under" or "arising in" jurisdiction to enter the Abstention Order and, consequently, the BAP had jurisdiction to enter the BAP Judgment. Alternatively, the Bankruptcy Court had "related to" jurisdiction to enter the Abstention Order, and therefore, the BAP had jurisdiction to enter the BAP Judgment.

---

[84] To the extent that VOL asserts that it can obtain a release of the funds deposited in the Bankruptcy Court's registry without both (1) a completion of the Tenth Circuit Appeal and all subsequent proceedings and (2) an adjudication of the Claim Objections, it is wrong. The Plan provisions clearly require that both prerequisites be satisfied before funds are released. And the confirmation and consummation of the Plan mean that its terms cannot be modified. *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir. 1995); *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502-03 (2015); *In re Heritage Hotel P'ship I*, 160 B.R. 374 (9th Cir. BAP 1993), *aff'd* 59 F.3d 175 (9th Cir. 1995) ("It is now well-settled that a bankruptcy court's confirmation order is a binding, final order, accorded full res judicata effect and precludes the raising of issues which could or should have been raised during the pendency of the case . . . .")

Accordingly, the Motion should be denied.

DATED: March 30, 2023        MARSHACK HAYS LLP

By: */s/ Matthew W. Grimshaw*
      MATTHEW W. GRIMSHAW
      DAVID A. WOOD
      Attorneys for Appellee,
      HEARTWISE, INC.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

COA No.: 22-60060
BAP No. CC-22-1089
Bk. No. 8:20-bk-13335-SC
*In re: Heartwise, Inc.*

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

☒  this brief contains 6,053 words, excluding the parts of the brief exempted

by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

2.   This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒  this brief has been prepared in a monospaced spaced typeface using

*(state name and version of word processing program)*  Word,

 14 point, Times New Roman_____


DATED: March 30, 2023          MARSHACK HAYS LLP


                               By: */s/ Matthew W. Grimshaw*_____
                                   MATTHEW W. GRIMSHAW
                                   DAVID A. WOOD
                                   Attorneys for Appellee,
                                   HEARTWISE, INC.

COA No.: 22-60060
BAP No. CC-22-1089
Bk. No. 8:20-bk-13335-SC
*In re: Heartwise, Inc.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2022, I electronically filed **APPELLEE'S OPPOSITION TO MOTION FOR SUMMARY DISPOSITION TO VACATE ORDERS ISSUED-NO JURISDICTION** with the Clerk of the Court for the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

| | | | |
|---|---|---|---|
| Anastasia K. Billy<br>Sheppard Mullin Richter & Hampton, LLP<br>650 Town Center Drive<br>10th Floor<br>Costa Mesa, CA 92626<br>Email: abilly@sheppardmullin.com | 22-60060 | Email | Active |
| Matthew W. Grimshaw<br>Marshack Hays, LLP<br>870 Roosevelt Avenue<br>Irvine, CA 92620<br>Email: MGrimshaw@marshackhays.com | 22-60060 | Email | Active |
| Aaron J. Malo<br>Sheppard Mullin Richter & Hampton, LLP<br>650 Town Center Drive<br>10th Floor | 22-60060 | Email | Active |

| | | | |
|---|---|---|---|
| Costa Mesa, CA 92626<br>Email: amalo@sheppardmullin.com | | | |
| Chad Nydegger<br>Workman Nydegger<br>60 E South Temple<br>Suite 1000<br>Salt Lake City, UT 84111<br>Email: cnydegger@wnlaw.com | 22-60060 | Email | Active |
| Douglas Plazak<br>Reid & Hellyer APC<br>P.O. Box 1300<br>Riverside, CA 92502<br>Email: dplazak@rhlaw.com | 22-60060 | Email | Active |
| Dean G. Rallis Jr.<br>Anglin Flewelling Rasmussen Campbell & Trytten, LLP<br>301 North Lake Avenue<br>Suite 1100<br>Pasadena, CA 91101<br>Email: drallis@afrct.com | 22-60060 | Email | Active |
| Jeffrey Weston Shields<br>Ray Quinney & Nebeker, PC<br>36 S State Street<br>Suite 1400<br>Salt Lake City, UT 84111<br>Email: jshields@rqn.com | 22-60060 | Email | Active |

Dated: March 30, 2023

*/s/ Cynthia Bastida*
CYNTHIA BASTIDA